# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

GWENDOLYN MARIE OLEARY,            )
                                   )
                    Plaintiff,     )
                                   )
            vs.                    )            No. 4:23-cv-00725-MTS
                                   )
LELAND DUDEK, *Acting Commissioner of*     )
*the Social Security Administration*,[1]    )
                                   )
                    Defendant.     )

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant, the Acting Commissioner of the Social Security Administration, denying the application of Gwendolyn Oleary ("Plaintiff") for Disability Insurance Benefits ("DIB").[2]  On May 3, 2019, Plaintiff applied for DIB under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act").  (Tr. 12). Plaintiff alleges disability due to neuropathy, diabetes type II, high cholesterol, high blood pressure, arthritis, migraines, Dupuyten's contracture, carpal tunnel syndrome, cubital tunnel syndrome, and pinched nerves, with an alleged onset date of January 1, 2017.  (Tr. 12, 278).  In October 2022, following a hearing, an Administrative Law Judge ("ALJ") issued her decision finding that Plaintiff was not disabled as defined in the Act.  (Tr. 23).  For the following reasons, the Court affirms.

---

[1] Leland Dudek is now the Acting Commissioner of the Social Security Administration.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Dudek is substituted as the proper defendant.

[2] Section 405(g) of Title 42 provides for judicial review of the SSA Commissioner's "final decision."  After the ALJ concluded Plaintiff was not disabled under the Act during the relevant disability period, (Tr. 23), the Appeals Council denied Plaintiff's request for review (Tr. 1–6); thus, the ALJ's decision stands as the Commissioner's final decision.

## I.    <u>Standard of Review and Legal Framework</u>

To be eligible for disability benefits, Plaintiff must prove that she is disabled under the Act. *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work" but also unable to "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at §§ 423(d)(2)(A).

The Social Security Administration has established a five-step sequential process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). Steps 1–3 require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her disability meets or equals a listed impairment. *Id.* at §§ 404.1520(a)–(d). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to Steps 4 and 5. *Id.* at § 416.920(e). At this point, the ALJ assesses the claimant's residual functioning capacity ("RFC"), "which is the most a claimant can do despite h[is] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009); 20 C.F.R. § 404.1545. The U.S. Court of Appeals for the Eighth Circuit has noted that the ALJ must determine a claimant's RFC based on all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005). At Step 4, the ALJ must determine whether the claimant can return to her past relevant work by comparing the RFC with

the physical demands of the claimant's past relevant work.  20 C.F.R. § 404.1520(f).  If the ALJ

finds at Step 4 that a claimant can return to past relevant work, the claimant is not disabled.  *Id.*

The court's role on judicial review is to decide whether the ALJ's determination is

supported by "substantial evidence" on the record as a whole.  *Wagner v. Astrue*, 499 F.3d 842,

848 (8th Cir. 2007).  Substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).  In

determining whether the evidence is substantial, the Court considers evidence that both supports

and detracts from the ALJ's decision.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Even if

substantial evidence would have supported an opposite decision or the reviewing court might have

reached a different conclusion had it been the finder of fact, the Court must affirm the

Commissioner's decision if the record contains substantial evidence to support it.  *See McNamara*

*v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the

Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be

drawn from the evidence, and even if [the court] may have reached a different outcome"); *Locher*

*v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992) (explaining a court may not reverse merely because

substantial evidence would have supported an opposite decision).  The Eighth Circuit has

emphasized repeatedly that a court's review of an ALJ's disability determination is intended to be

narrow and that courts should "defer heavily to the findings and conclusions of the Social Security

Administration."  *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (quoting *Howard v.*

*Massanari*, 255 F.3d 577, 581 (8th Cir. 2001)).  Despite this deferential stance, a district court's

review must be "more than an examination of the record for the existence of substantial evidence

in support of the Commissioner's decision," *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998),

and not merely a "rubber stamp," *Cooper v. Sullivan*, 919 F.2d 1317, 1320 (8th Cir. 1990).

## II.    **The ALJ's Decision**

The ALJ's decision in this matter conforms to the five-step process outlined above.  At Step 1, the ALJ found Plaintiff did not perform substantial gainful activity ("SGA") from her alleged onset date of January 1, 2017 through her date last insured of December 31, 2020.  (Tr. 14).  At Step 2, the ALJ found that, since January 1, 2014, Plaintiff has had the severe impairments of diabetes with neuropathy, arthritis, and carpal tunnel syndrome and cubital tunnel syndrome of the right hand and elbow.  (Tr. 15).  At Step 3, the ALJ found that, during the relevant period, Plaintiff did *not* have an impairment or combination of impairments that met the severity of a statutorily recognized impairment.  (Tr. 16).  Thus, the ALJ found that Plaintiff had the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b), with manipulative and environmental limitations.  (Tr. 17).  Plaintiff cannot stand or walk six hours in an eight-hour workday, but she can sit six hours in an eight-hour workday.  *Id.*  Plaintiff can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and she can frequently handle and finger.  *Id.*  She can never climb ropes, ladders, or scaffolds; must avoid concentrated exposure to extreme cold, vibration, and humidity; and must avoid all exposure to hazards.  *Id.*  At Step 4, the ALJ found that Plaintiff could perform past relevant work as a bail bonding agent, general clerk, and food salesclerk.  (Tr. 21).  Consequently, the ALJ concluded that Plaintiff was not disabled under the Act.  (Tr. 23).

## III.    **Discussion**

The specific issues in this case are (1) whether the ALJ properly evaluated FNP-C Alexsander Shoykhet's medical opinion and (2) whether the ALJ failed to properly support the RFC with medical evidence of Plaintiff's ability to function in the workplace.

4

### 1. *The ALJ Properly Evaluated FNP-C Shoykhet's Medical Opinion*

Plaintiff contends that the ALJ failed properly evaluate FNP-C Shoykhet's opinion because the ALJ did not adequately discuss the supportability factor in assessing the opinion's persuasiveness. For claims filed on or after March 27, 2017, an ALJ evaluates medical opinions and prior administrative medical findings pursuant to 20 C.F.R. § 404.1520c. These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of all of the medical opinions and prior administrative medical findings in a claimant's case record by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(a), (c).

In evaluating the persuasiveness of a medical opinion, the most important factors for an ALJ to consider are supportability and consistency, and the ALJ must "explain how [she] considered the supportability and consistency factors . . . in [the] determination or decision." 20 C.F.R. § 404.1520c(b)(2). An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal. *See Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069–70 (8th Cir. 2020) (remanding where ALJ discredited a physician's opinion without discussing the factors contemplated in the regulations, as failure to comply with the

5

opinion-evaluation regulations was legal error)).  "Section 416.920c(b) requires more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions."  *Hirner v. Saul*, No. 2:21 CV 38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).  "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed."  *Svendsen v. Kijakazi*, No. 1:21-CV-1029-CBK, 2022 WL 2753163, at *8 (D.S.D. July 14, 2022) (citing *Goss v. Kijakazi*, No. 4:21-cv-00663-LPR-JJV, 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  In articulating how she considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician's opinion stems from a checklist, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion.  *Starman v. Kijakazi*, No. 2:20-cv-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (collecting cases).

Here, the ALJ adequately articulated her consideration of the supportability factor in determining that FNP-C Shoykhet's opinion was not persuasive.  First, Shoykhet's opinion "was entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form."  *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022); *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (explaining that a treating physician's opinion that consists of "conclusory statements—checked boxes, circled answer, and brief fill-in-the-blank

responses" and "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone); *see also Starman*, 2021 WL 4459729, at *4 (stating that an ALJ may properly consider that the physician's opinion stems from a checklist or that the physician did not provide a detailed explanation for the opinion).  Second, the ALJ found that the extreme limitations in Shoykhet's medical source statement were inconsistent with the record as a whole as well as Shoykhet's own treatment notes, which consistently found that Plaintiff had four out of five strength at the bilateral EHL and no other strength deficits in the remainder of the bilateral lower extremities.  *See Starman*, 2021 WL 4459729, at *4 (explaining that in articulating how an ALJ considered the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion); (Tr. 20, 734–35, 743–44, 751–52).  The ALJ stated that Shoykhet's opinion was also inconsistent with treatment notes from a different provider who found that: Plaintiff's neuropathy had improved after a spinal stimulator was implanted in November 2021 (Tr. 20, 631, 633); Plaintiff had a normal gait, muscle bulk, muscle tone, and full strength throughout all four extremities in December 2021 (Tr. 20, 632); and in June 2022, Plaintiff reported that her neuropathy was stable, and the provider found that she had full strength in her extremities and a normal gait, and her sensory examination to light touch was normal in her upper and lower extremities (Tr. 20, 620–21).  Thus, the ALJ adequately evaluated Shoykhet's opinion under the regulations.

### 2.  *The ALJ's RFC Finding Is Supported by Substantial Evidence*

Plaintiff argues that the ALJ failed to properly support the RFC with some medical evidence of her ability to perform light work.  She asserts that the RFC is contradicted by FNP-C Shoykhet's and Dr. David Shaw's medical opinions, both of which the ALJ found unpersuasive,[3]

---

[3] Plaintiff asserts that FNP-C Shoykhet's and Dr. Shaw's medical opinions were the "only two medical opinions within the record," Doc. [8] at 10, but the ALJ also explicitly discussed a 2022 opinion of Dr.

and in the absence of opinion evidence, the ALJ improperly drew her own inferences about Plaintiff's functional abilities from the objective medical evidence.

The RFC is "the most [a claimant] can still do despite" her physical or mental limitations. 20 C.F.R. § 404.1545(a)(1).  "The RFC is a function-by-function assessment of an individual's ability to do work-related activities based upon all of the relevant evidence." *Casey v. Astrue*, 503 F.3d 687, 696–97 (8th Cir. 2007) (quoting *Harris v. Barnhart*, 356 F.3d 926, 929 (8th Cir. 2004)). "While the ALJ must consider all of the relevant evidence in determining a claimant's RFC, the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Id.* (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).  "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (first citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); and then citing *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)).  "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Id.* (alteration in original) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).  "With the medical record adequately developed, the ALJ was not required to seek additional information . . . or order a CE." *Id.* (first citing *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016); and then citing 20 C.F.R. § 404.1519a(b)).  This Court "will not disturb an ALJ's RFC finding so long as it is supported by 'substantial evidence in the record as a whole.'" *Austin v. Kijakazi*, 52 F.4th 723, 730 (8th Cir. 2022) (quoting *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022)).

---

Clayton Scanlon, who completed a vision impairment sheet that noted no visual limitations other than the mild limitation of Plaintiff's visual acuity at a distance, and found Dr. Scanlon's opinion persuasive.  (Tr. 20, 934).  The Court understands Plaintiff to be asserting that FNP-C Shoykhet's and Dr. Shaw's opinions were the only medical opinions regarding Plaintiff's non-visual impairments.

As an initial matter, an ALJ is not required to adopt or give additional weight to FNP-C Shoykhet's and Dr. Shaw's 2022 medical opinions simply because there is little medical opinion evidence in the record. *See Hensley*, 829 F.3d at 932 ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion."); *see also Cox*, 495 F.3d at 619–20 (explaining that an ALJ is not required to seek clarification in the absence of medical opinions where medical records and other evidence support the RFC determination); *Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) (affirming the ALJ's RFC determination where ALJ properly considered the available medical and testimonial evidence, and the only opinion in the record was given little weight because the doctor was had not opened an official record for plaintiff and gave no opinion as to her condition during the relevant time period). Like FNP-C Shoykhet's opinion, Dr. Shaw's opinion was also rendered on a check-box and fill-in-the-blank form that lacks explanations and is inconsistent with the record. *See Nolen v. Kijakazi*, 61 F.4th 575, 577 (8th Cir. 2023) (finding "[t]he opinion's bare, formulaic conclusion presumptively warranted little evidentiary weight because it was rendered on a check-box and fill-in-the-blank form"). With respect to Dr. Shaw's opinion that Plaintiff needed to elevate her legs for 50 percent of an 8-hour workday to reduce pain and swelling, the ALJ properly found that his opinion was not persuasive because it was not supported by the objective medical records, which consistently noted no edema in Plaintiff's extremities prior to the date last insured. (Tr. 20, 366, 376, 385, 392, 406, 418, 432, 475, 483, 485, 522, 554, 1057). The ALJ determined that Dr. Shaw's finding that Plaintiff could not lift any weight was inconsistent with the generally normal strength findings in her medical records. (Tr. 21, 432, 477, 554, 621, 632, 652, 676, 697, 706, 1056). Dr. Shaw's strength finding was also inconsistent with Plaintiff's own testimony that she could probably lift approximately 20 pounds during the relevant time period. *See Thomas*, 881 F.3d at 676 ("Thomas's self-reported

activities of daily living provided additional reasons for the ALJ to discredit Dr. Hollis's pessimistic views of her abilities."); (Tr. 48–49).  Thus, the ALJ did not err in discounting Dr. Shaw's opinion and rejecting his proposed limitations.

   In support of her assertion that the ALJ failed to support the RFC with some medical evidence of her ability to perform light work, Plaintiff relies on *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020) (finding that the "the absence of evidence to suggest the accuracy or propriety of" an ascribed standing limitation demonstrated that the ALJ did not fulfill the duty to fully develop the record and warranted remand).  Unlike *Noerper*, however, there is substantial evidence in the record to support the ALJ's RFC determination.  In crafting the RFC, the ALJ discussed Plaintiff's testimony regarding her pain and other symptoms related to her impairments, including her weakness and decreased feeling in her left hand, her diabetic neuropathy that caused decreased sensation in all four extremities, and her back pain.  (Tr. 17).  The ALJ considered Plaintiff's daily activities, which included household chores such as vacuuming, sweeping, dusting, and mopping; half of the cooking; periodically doing the laundry with her son's help carrying it down to the basement; and driving.  (Tr. 17, 40–41, 44).  Plaintiff testified that she could manipulate buttons and zippers, tie her shoes, and during the relevant time period, she could probably lift approximately 20 pounds.  (Tr. 17, 46–49).  Plaintiff testified that her back pain and the neuropathy in her feet limited her ability to stand and walk and that she elevated her legs almost daily for approximately 45 minutes to reduce the swelling in her legs.  (Tr. 17, 49–52).

   The ALJ then properly considered the objective medical evidence.  *See Hensley*, 829 F.3d at 932 ("In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians [can] provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'") (alteration in original).  (Tr. 18–19).  With respect to

Plaintiff's neuropathic symptoms, physicians stated in their objective findings that Plaintiff experienced decreased sensation in her feet and hands, which the ALJ found was consistent with Plaintiff's abnormal monofilament examinations and weakness of grip.  (Tr. 385, 485, 686, 717–18).  Physicians also routinely noted that Plaintiff's gait was normal and that she had full strength in her upper extremities.  (Tr. 366, 385, 392, 406, 418, 432, 477, 478, 515).  As for Plaintiff's arthritic symptoms, physicians noted that she had tenderness at the lumbar spine and a reduced range of motion in 2020.  (Tr. 528).  At her initial pain management examination in July 2020, a physician noted that she had four out of five strength at the bilateral EHL, but there were no strength deficits in the remainder of the bilateral lower extremities, (Tr. 716–17), and those strength findings remained the same through the date last insured (Tr. 755).  In December 2020, Plaintiff presented with sporadic episodes of weakness in her left arm that caused her drop objects she was holding, but the physician's examination stated that she had normal muscle bulk, muscle tone, and full strength throughout all four extremities.  (Tr. 651–52).

Thus, the ALJ found that Plaintiff's impairments, her daily activities, and the objective medical evidence supported a finding that Plaintiff could perform light work with manipulative and environmental limitations.  (Tr. 18).  The ALJ found that Plaintiff's abnormal monofilament testing, along with her impairments of carpal tunnel syndrome, cubital tunnel syndrome, and neuropathy, supported finding that Plaintiff could never climb ladders, ropes, or scaffolds and that she was limited to frequent handling and fingering and should avoid concentrated exposure to extreme cold, vibrations, and humidity, which could aggravate her neuropathic and arthritic impairments.  (Tr. 19).  Thus, as detailed by the ALJ throughout her decision, there was sufficient medical evidence and other evidence of record supporting her conclusion that Plaintiff had the RFC to perform lightwork with additional restrictions.  *See Austin*, 52 F.4th at 730.

11

## **CONCLUSION**

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 31st day of March 2025.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE